**CASE NO. _____**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

PENTAGON FEDERAL CREDIT UNION,

Defendant-Petitioner,

v.

JOSEPH BOCZEK.
on behalf of himself and all other similarly situated,

Plaintiff-Respondent.

---

On Appeal from the United States District Court for the Northern
District of West Virginia, Clarksburg Division, Case No. 1:23-cv-00043-TSK

---

**DEFENDANT'S PETITION FOR REVIEW OF CLASS CERTIFICATION
ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)**

---

Michael A. Graziano
Sarah A. James
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, NW, #1200
Washington, D.C. 20006
Telephone: 202.659.6671
Facsimile: 202.659.6699
E-mail: mgraziano@eckertseamans.com
sjames@eckertseamans.com
*Attorneys for Defendant-Petitioner*

Dated: November 17, 2025

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _____    Caption: Pentagon Federal Credit Union v. Joseph Boczek

Pursuant to FRAP 26.1 and Local Rule 26.1,

Pentagon Federal Credit Union
(name of party/amicus)

_____

who is _____ Defendant-Petitioner _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2. Does party/amicus have any parent corporations?  ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:




3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
   If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Michael A. Graziano          Date:      11/17/2025

Counsel for: Pentagon Federal Credit Union

- 2 -

Print to PDF for Filing

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

A.    STATEMENT OF FACTS ............................................................... 4

B.    QUESTIONS PRESENTED ............................................................ 7

C.    RELIEF REQUESTED ................................................................... 7

D.    REASONS AN APPEAL SHOULD BE ALLOWED ................................... 8

   I.    Standard of Review ............................................................... 8

   II.    The Opinion Does Not Reflect a Rigorous Analysis ................................. 9

   III.    The District Court Committed Manifest Error in Certifying a Class.................. 13

   IV.    Other Lienhart Factors Weigh in Favor of Interlocutory Review ....................... 21

CONCLUSION ........................................................................................ 22

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ........................... 24

CERTIFICATE OF SERVICE.................................................................... 25

# TABLE OF CITATIONS

## Cases

*Adkins v. Credit Acceptance Corp.*, No. 2:16-CV-03343, 2016 WL 7451619
(S.D.W. Va. Dec. 28, 2016) .......................................................... 13, 14

*Am. Exp. Co. v. Koerner*, 452 U.S. 233 (1981)................................... 16, 18

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202 (4th Cir.
2024)..........................................................................................9

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ................................9, 12

*Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299 (4th Cir. 2013)...............2, 11

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) .................................. *passim*

*Fleet v. Webber Springs Owners Ass'n, Inc.*,
772 S.E.2d 369 (W. Va. 2015)..................................................... 1, 14, 15

*Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974)...................19

*Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672 (7th Cir. 2013)....................19

*In re Onstar Contract Litig.*, 278 F.R.D. 352 (E.D. Mich. 2011) ........................2, 17

*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138 (4th Cir. 2001)............................. *passim*

*Loughlin v. Amerisave Mortg. Corp.*, No. 1:14-CV-3497-LMM-LTW, 2018 WL
1896409 (N.D. Ga. 2018) ........................................................ 2, 17, 19

*McLaughlin v. Chrysler Corp.*, 262 F. Supp. 2d 671 (N.D. W. Va. 2002), *aff'd*, 47
F. App'x 659 (4th Cir. 2002).................................................... 16, 17, 18

*Morris v. Marshall*, 305 S.E.2d 581 (W. Va. 1983) ..................................... 1, 14, 15

*Powers v. Fifth Third Mortg. Co.*, No. 1:09-cv-2059, 2011 WL 3811129 (N.D.
Ohio Aug. 12, 2011) ................................................................ 2, 17, 19

*Roman v. First Franklin Fin. Corp.*, No. 00 C 7228, 2001 WL 322563 (N.D. Ill. March 3, 2011)..................................................................................2, 17

*Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671 (4th Cir. 2024) ......10, 11, 12

*Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267 (4th Cir. 2010)..……………21

*Toldy v. Fifth Third Mortg. Co.*, No. 1:09 CV 377, 2011 WL 4634154 (N.D. Ohio Sept. 30, 2011)..........................................................................2, 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...........................................2, 9

**Statutes**

Class Action Fairness Act ...............................................................................22

W. Va. Code § 46A-2-122 ............................................................... 14, 15, 18

W. Va. Code § 46A-2-124 ...............................................................................13

W. Va. Code § 46A-2-127 ...............................................................................13

W. Va. Code § 46A-2-128 ...............................................................................13

W. Va. Code § 46A-5-101 ...............................................................................22

W. Va. Code § 46A-5-104 ...............................................................................22

W. Va. Code § 46A-5-106 ...............................................................................22

West Virginia Consumer Credit and Protection Act ...................................... *passim*

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................... *passim*

## INTRODUCTION

Joseph Boczek claims Pentagon Federal Credit Union ("PenFed") violated the West Virginia Consumer Credit and Protection Act ("WVCCPA") by charging convenience fees for a certain type of payment on consumer loans. An essential element of the claim is proof that the loan proceeds were used primarily for personal, family, or household purposes, which necessarily requires an individualized inquiry. The District Court abused its discretion by certifying a class without explaining how that essential question can be answered on a class-wide basis. Indeed, the opinion does not even acknowledge the applicable standard or cite any record evidence.

Under controlling precedent, the issue of whether the WVCCPA applies to a loan turns on how the debtor actually used the funds, rather than more readily identifiable facts such as the debtor's status as an individual or a corporate entity. *Morris v. Marshall*, 305 S.E.2d 581, 582-84 (W. Va. 1983); *Fleet v. Webber Springs Owners Ass'n, Inc.*, 772 S.E.2d 369, 376-79 (W. Va. 2015). Since "class members are impossible to identify without extensive and individualized fact-finding or mini-trials," Boczek failed to satisfy the ascertainability and predominance requirements for class certification. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quotation and citations omitted).

Several courts have denied class certification in similar cases due, in part, to the fact-intensive inquiry necessary to determine whether a transaction was for

1

consumer purposes. *See*, *e.g.*, *In re Onstar Contract Litig.*, 278 F.R.D. 352, 380-81 (E.D. Mich. 2011); *Loughlin v. Amerisave Mortg. Corp.*, No. 1:14-CV-3497-LMM-LTW, 2018 WL 1896409, at *15-16 (N.D. Ga. 2018); *Toldy v. Fifth Third Mortg. Co.*, No. 1:09 CV 377, 2011 WL 4634154, at *3-4 (N.D. Ohio Sept. 30, 2011); *Powers v. Fifth Third Mortg. Co.*, No. 1:09-cv-2059, 2011 WL 3811129, at *14-20 (N.D. Ohio Aug. 12, 2011); *Roman v. First Franklin Fin. Corp.*, No. 00 C 7228, 2001 WL 322563, at *2 (N.D. Ill. March 3, 2011). PenFed argued that the District Court should employ the same rationale in this case.

In addressing PenFed's argument, the District Court had "an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites [for class certification] have been satisfied." *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). This Court consistently requires trial courts to demonstrate compliance with the "rigorous analysis" obligation by providing explanations sufficient "to ensure meaningful appellate review." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 311 (4th Cir. 2013).

Respectfully, the District Court's opinion contains none of the hallmarks of a rigorous analysis of the critical issue addressed herein. The opinion does not acknowledge binding precedent establishing the test for determining whether a transaction is subject to the WVCCPA, let alone explain how that test can be applied on a class-wide basis. Nor does the opinion identify any criteria or evidence the

District Court considered in finding any transactions qualify as consumer loans. The opinion misses those issues by making a few conclusory statements without citing any record evidence or applying the controlling legal principles. (Op., Ex. 1 at 18.)

"[T]he weakness of the certification order may alone suffice to permit the Court of Appeals to grant review." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 145 (4th Cir. 2001). Since the opinion does not demonstrate the rigorous analysis required under binding precedent, this Court should grant PenFed's petition and ultimately vacate the class certification order.

Finally, interlocutory review is especially appropriate based on other factors established by this Court in *Lienhart* ("the *Lienhart* factors"). The issue at the heart of PenFed's appeal—whether class treatment is appropriate when a claim requires proof of how loan proceeds were actually used—is of general importance, as demonstrated by the fact that both parties cited several non-binding opinions. Due to economic practicalities created by the WVCCPA's stiff penalties, however, that important issue is likely to remain untested absent interlocutory review. Specifically, PenFed faces a risk that a class with only $7,485.00 in total damages could seek up to $2,050,919.91 based on statutory penalties and adjustments for inflation, and that is before accounting for attorney's fees. The risk of such a disproportionate award creates immense pressure to settle regardless of the merits.

3

### A.    STATEMENT OF FACTS

PenFed charges a one-time convenience fee of $5.00 when a member chooses to make an ACH transfer from an outside account to certain types of PenFed accounts with the assistance of a PenFed employee. (Dkt. No. 101-3 at PageID # 624-25)[1] PenFed does not charge the fee when a member makes an ACH transfer without employee assistance, such as payments made over the phone through PenFed's interactive voice recognition system, payments made through PenFed's website, or payments made on the PenFed Mobile App. (*Id.*)

PenFed also does not charge the fee for ACH payments on loans secured by real property. (*Id.*) It does, however, charge the fee for ACH payments on other types of loan products, including unsecured personal loans, credit cards, loans secured by certificates of deposit, lines of credit covering overdrafts, and loans secured by vehicles. (Dkt. No. 102-2 at PageID # 703:8-706:10, 707:2-708:10, 720:4-722:7.)

In June 2022, Boczek became a member of PenFed and borrowed funds to refinance his prior purchase of a vehicle. (Dkt. No. 102-1 at PageID # 689:1-12, 692:1-693:11; Dkt. No. 102-3.) The agreement required Boczek to make monthly payments. (Dkt. No. 102-3.) Boczek claims he paid the $5.00 convenience fee to make an ACH payment by telephone seven times. (Dkt. No. 101 at PageID # 566.)

---

[1] Citations to the record include the docket entry number ("Dkt. No.") and "PageID" number ("PageID #") assigned by the electronic filing system.

Boczek is a small business owner. (Dkt. No. 102-1 at PageID # 683:20-686:13, 688:11-23.) He has operated a marketing company, JB Business Strategies ("JBBS"), as a sole proprietorship since 1993. (*Id.*) JBBS has a bank account with Clear Mountain Bank ("CMB"). (*Id.* at PageID # 694:11-25.) Boczek also has a personal account with CMB. (*Id.*) The payments he made on the loan at issue were from a CMB account. (Dkt. No. 102-4.) Boczek testified that he may have used JBBS's account to make the loan payments:

> Q. What bank accounts have you used to make payments to PenFed on the auto loan?
> A. I'm not 100 percent sure, but I think we've used a variety of our bank accounts or -- year. I -- I -- we may -- use our personal and we may have paid out of the business, but I'm not for certain.

(Dkt. No. 102-1 at PageID # 694:4-10.)

Boczek moved for class certification. (Dkt. No. 100.) He argued that PenFed charged the fee 1,497 times on 422 accounts during the relevant period. (Dkt. No. 101 at PageID # 567.) Those figures are derived from spreadsheets listing each instance in which PenFed charged the fee to a member who had a West Virginia address at the time PenFed searched the data. (Dkt. No. 101-4; Dkt. No. 101-3 at PageID # 619-624.)

Boczek claimed all accounts in the spreadsheet were "'consumer'" loans. (Dkt. No. 103 at PageID # 755-56.) For support, he relied exclusively on deposition testimony by PenFed's corporate representative. (*Id.* (citing Dkt. No. 103-1 at

PageID # 767:7-16, 768:16-21, 769:13-17, 772:22-773:5, 774:23-775:3, 777:21-778:11).) However, the testimony did not address how the borrowers actually used the funds. (*Id.*) Instead, the witness simply referred to an internal designation using the term "consumer" and explained that PenFed does not issue loans directly to businesses (except commercial real estate loans). (*Id.*)

When PenFed compiled the spreadsheets, it did not filter out any transactions based on the type of loan involved.[2] (*See* Dkt. No. 101-3 at PageID # 621-624.) Accordingly, the accounts in the spreadsheets consist primarily of unsecured lump-sum loans, credit cards, loans secured by certificates of deposit, and loans secured by vehicles. (Dkt. No. 102-2 at PageID # 703:8-706:10, 707:2-708:10, 720:4-722:7.)

Besides acronyms identifying vehicle loans, there is no evidence in the record showing how the borrowers used any of the funds PenFed disbursed in connection with a vast majority of the accounts. (*See* Dkt. No. 101-4.) Boczek never proposed a methodology for ascertaining that information.

The District Court entered an opinion and order granting class certification on November 3, 2025. (Ex. 1.) A copy is attached hereto as Exhibit 1.

---

[2] The spreadsheets do not include loans secured by real property because PenFed does not charge the fee on such loans. (Dkt. No. 101-3 at PageID # 624-25)

## B.     QUESTIONS PRESENTED

1.     Should this Court permit an appeal because the District Court failed to conduct a rigorous analysis of the ascertainability and predominance requirements before granting class certification?

2.     Did the District Court commit manifest error in determining that class certification is appropriate despite the need for individualized inquiries to determine whether each loan was primarily for personal, family, or household purposes, as required for plaintiffs to prevail under the WVCCPA?

3.     Do the *Lienhart* factors weigh in favor of granting PenFed's petition because it raises an issue of general importance that will likely remain untested in the absence of interlocutory review?

## C.     RELIEF REQUESTED

The Court should grant PenFed's petition for review under Rule 23(f) and issue a briefing and argument schedule. After briefing and argument, the Court should vacate the District Court's order granting class certification and remand the case for resolution of Boczek's individual claims.

### D. REASONS AN APPEAL SHOULD BE ALLOWED

### I. Standard of Review.

Rule 23(f) gives this Court "unfettered discretion whether to permit [an] appeal" from an order granting class certification. Fed. R. Civ. P. 23 advisory committee's notes to 1998 amendment. The Court weighs five factors:

> (1) whether the certification ruling is likely dispositive of the litigation; (2) whether the district court's certification decision contains a substantial weakness; (3) whether the appeal will permit the resolution of an unsettled legal question of general importance; (4) the nature and status of the litigation before the district court (such as the presence of outstanding dispositive motions and the status of discovery); and (5) the likelihood that future events will make appellate review more or less appropriate.

*Lienhart*, 255 F.3d at 144.

"[T]he weakness of the district court's certification, viewed in terms of the likelihood of reversal under an abuse of discretion standard, operates on a 'sliding scale' in conjunction with the other factors[.]" *Id.* at 146 (quotation omitted). "[T]he court should grant the petition, notwithstanding the other factors, '[w]here a district court's certification decision is manifestly erroneous and virtually certain to be reversed on appeal.'" *EQT Prod. Co.*, 764 F.3d at 357 (quoting *Lienhart*, 255 F.3d at 145). "[W]here decertification is a functional certainty, the weakness of the certification order may alone suffice to permit the Court of Appeals to grant review." *Lienhart*, 255 F.3d at 145.

8

## II.     The Opinion Does Not Reflect a Rigorous Analysis.

"A party seeking class certification must do more than plead compliance with … Rule 23." *EQT Prod. Co.*, 764 F.3d at 357 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 350). "Rather, the party must present evidence that the putative class complies with Rule 23." *Id.* (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).

"Concomitantly, 'the district court has an independent obligation to perform a rigorous analysis to ensure that all of the prerequisites [for class certification] have been satisfied.'" *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024) (quoting *EQT Prod. Co.*, 764 F.3d at 358) (internal quotation omitted). "[A] district court may need to 'probe behind the pleadings before coming to rest on the certification question.'" *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Comcast Corp.*, 569 U.S. at 33) (internal quotation omitted). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim … because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp.*, 569 U.S. at 33 (quotation omitted).

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable." *EQT Prod. Co.*, 764 F.3d at 358 (quotation omitted). "A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* (quotation omitted). "[I]f class

members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Id.* (quotation omitted). The requirement is not satisfied unless "it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (quotation omitted).

"Rule 23(b)(3)'s predominance requirement is necessarily intertwined with Rule 23(a)'s commonality requirement." *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671, 679 (4th Cir. 2024). "Predominance presupposes that a common question exists and measures the question's significance to the pending litigation. While commonality serves to ask whether class-wide proceedings are even possible, predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (quotation omitted).

In opposing class certification, PenFed argued that Boczek failed to satisfy his burden of establishing ascertainability and predominance, among other things. (Dkt. No. 102 at PageID # 11-22.) The issue featured most prominently in PenFed's opposition was whether the individualized nature of the test for analyzing if a loan was for consumer purposes precluded class treatment under the ascertainability and predominance factors. (*Id.* at PageID # 654-655, 665-669, 674-675, 677.) Boczek also addressed the issue in detail. (Dkt. No. 103 at PageID #755-757.)

Despite the well-developed arguments, the opinion barely addressed the issue. (Ex. 1 at 18.) The opinion does not acknowledge binding decisions establishing the

test for determining if a transaction was made primarily for consumer purposes, does not acknowledge the cases that addressed the same issue in the context of class certification, does not cite any record evidence, and does not explain how loans that are not subject to the WVCCPA can be parsed from those that are covered. (*Id.*)

The only explanation the Court provided on the issue is as follows:

> [A]n individualized inquiry into the primary purpose for each loan is not necessary because the proposed class only contains consumer loans and a small amount of personal credit cards. Boczek, as the putative class member, represents the proposed class because he had a consumer auto loan. Because the class is limited to consumer loans, it is not necessary to individually determine if the loans were incurred for personal, family, or household purposes. Furthermore, PenFed's own records establish that there were 1,497 fees collected on 422 consumer loans.

(*Id.* at 18.)

The opinion's reasoning is circular. It essentially states that it is not necessary to decide whether the loans are consumer loans because they are consumer loans. That approach falls far short of the rigorous analysis this Court requires trial courts to perform. *Stafford*, 123 F.4th at 681-82; *EQT Prod. Co.*, 764 F.3d at 359 & 370.

Indeed, this Court has consistently required trial courts to demonstrate compliance with the "rigorous analysis" obligation by giving detailed explanations sufficient "to ensure meaningful appellate review." *Ealy*, 514 F. App'x at 311. For example, this Court reversed class certification in *EQT Prod. Co.* because the trial court "glossed over" an ascertainability issue and also "fail[ed] to give any

11

consideration to what proof the plaintiff-focused elements [of the underlying claim] might require[.]" 764 F.3d at 359 & 370; *see also Stafford*, 123 F.4th at 681-82; (finding class definition circular because it "presumes, without more," that all workers had viable claims); *Ealy*, 514 F. App'x at 303 ("conclusory" explanation without analysis insufficient).

As in *EQT Prod. Co.*, the opinion in this case "fail[ed] to give any consideration to what proof the plaintiff-focused elements [of the underlying claim] might require[.]" 764 F.3d at 359 & 370. Specifically, the opinion does not address the type of proof required to determine if loan proceeds were used primarily for consumer purposes, as required for the WVCCPA to apply.

In addition to omitting controlling legal principles, the opinion does not demonstrate a rigorous analysis of factual issues because it does not "probe behind the pleadings before coming to rest on the certification question." *Id.* at 358 (quoting *Comcast Corp.*, 569 U.S. at 33) (internal quotation omitted). The District Court was required to ensure Boczek did "more than plead compliance" and that he "present[ed] evidence" establishing the prerequisites for class certification. *Id.* at 357 (citations omitted).

Despite the obligation to probe behind the pleadings, the opinion relies on allegations in Boczek's pleadings and arguments in briefs without citing record evidence. (Ex. 1 at 1-2.) For example, the only record citation in the entire

"background" section is to Boczek's amended complaint. (*Id.*) Similarly, although the opinion purports to describe a few documents, it cites briefs, not evidence. (*Id.* at 16 (citing Dkt. No. 103 at 11) & 19 (citing Dkt. Nos. 103 at 7 & 102 at 10).)

The opinion's failure to probe behind the pleadings led to basic errors. For example, the class definition it adopted includes payments made by "interactive voice recognition" or "other electronic means[,]" but unrebutted evidence proves PenFed never charged fees for those methods. (*Compare id.* at 20 *with* Dkt. No. 101-3 at PageID # 624-25.) This Court should grant PenFed's petition to ensure the issue of class certification receives a rigorous analysis.

## III.   The District Court Committed Manifest Error in Certifying a Class.

"An essential element of a cause of action" under each relevant provision of the WVCCPA is "the collection or attempted collection of a 'claim.'" *Adkins v. Credit Acceptance Corp.*, No. 2:16-CV-03343, 2016 WL 7451619, at *3 (S.D.W. Va. Dec. 28, 2016). The concept of a "claim" is at the heart of each provision Boczek invokes. The prefatory clauses in Sections 127 and 128 limit the enumerated prohibitions to conduct employed in the collection of a "claim." W. Va. Code §§ 46A-2-127 & 46A-2-128. While Section 124 does not use the term "claim" in the same manner, it incorporates the term by regulating conduct of a "debt collector[.]" W. Va. Code § 46A-2-124. The WVCCPA defines "debt collector" as a person

engaged in "debt collection[,]" which, in turn, is defined as conduct "in the collection of claims." W. Va. Code § 46A-2-122(c)-(d).

The WVCCPA defines "claim" as follows: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." W. Va. Code § 46A-2-122(b). Thus, to resolve the class claims, the Court must be able to tell whether each class member's debt "was incurred 'primarily for personal, family, or household purposes,' and thus covered by the statute, or primarily for commercial purposes, which would not be covered." *Adkins*, 2016 WL 7451619, at *4 (citing *Morris*, 305 S.E.2d at 584).

In analyzing whether a transaction was for consumer purposes, courts must perform fact-intensive inquiries, focusing on specific details of the transaction. Two published decisions in which the Supreme Court of West Virginia reached opposite conclusions, *Fleet* and *Morris*, illustrate the point.

*Fleet* held that assessments by a homeowner's association were consumer transactions. 772 S.E.2d at 376-79. The analysis focused on the specific terms of the declaration establishing the purpose of the assessments, which the opinion quoted *verbatim*. *Id.* at 377. Since the assessments were used for improving and maintaining "common areas of a planned community," including "common roads and common

14

recreational areas within the community," the Court found they were "primarily for personal, family, or household purposes, and, therefore, such assessments were 'claims' pursuant to W. Va. Code § 46A-2-122(b)." *Id.*

By contrast, *Morris* held that personal guarantees were not covered by a different provision of the WVCCPA because they were not consumer loans. 305 S.E.2d at 582-84. The guarantors were individuals who pledged their personal home as security. *Id*. at 586 n.9. Nevertheless, the Court held that the WVCCPA did not apply because the loan proceeds were used to finance an automobile dealership owned by the guarantors. *Id*. at 584.

*Fleet* and *Morris* demonstrate the nuanced approach necessary to determine the purpose of a transaction. Both holdings are counterintuitive on a superficial level. If a debtor's status as an individual, as opposed to a corporate entity, was dispositive, the personal guarantees in *Morris* would have qualified as consumer loans. Conversely, if the fact that funds were used by a corporate entity was dispositive, then the assessments in *Fleet* would not have been covered by the WVCCPA. In both cases, the Court reached a different conclusion by performing a deeper analysis of the actual purpose for which the funds were used.

Federal courts also use highly individualized inquiries to analyze whether a transaction was primarily for consumer purposes. The Supreme Court of the United States has acknowledged the task can be difficult: "We do not suggest that it always

15

will be easy to determine whether the opening of a credit account involves an extension of consumer credit." *Am. Exp. Co. v. Koerner*, <u>452 U.S. 233, 245</u> (1981). The Court even highlighted one of the specific categories of debt at issue here, noting that "often it is difficult to characterize the overall purpose of a credit card account that allows for a large number of individual transactions." <u>*Id.*</u> (citation omitted).

Analyzing whether a loan was for consumer purposes can require individualized proof even when the proceeds are used to purchase a single, identifiable item, such as a car, if that item is used for mixed purposes. *McLaughlin v. Chrysler Corp.*, <u>262 F. Supp. 2d 671, 680-82</u> (N.D. W. Va. 2002), *aff'd*, <u>47 F. App'x 659</u> (4th Cir. 2002). For example, the plaintiff in *McLaughlin* claimed he was a "consumer" under West Virginia's Lemon Law because he used a vehicle for personal and business purposes. <u>*Id.*</u> The Court rejected that argument upon finding the plaintiff used the vehicle "primarily" for his business. <u>*Id.*</u>

The testimony of the named plaintiff in this case further demonstrates the point. Boczek is a sole proprietor and admitted during deposition that he may have used a business account to make the payments at issue: "I'm not 100 percent sure, but I think we've used a variety of our bank accounts … we may -- use our personal and we may have paid out of the business, but I'm not for certain." (Dkt. No. 102-1 at PageID # 694:4-10.)

Standing alone, the fact that Boczek may have used business funds to make loan payments may not prove dispositive of his individual claims. If Boczek also testified that he primarily used the vehicle for the business that made the payments, however, the balance would surely have tipped in the opposite direction. *McLaughlin*, 262 F. Supp. 2d at 680-82. Either way, one thing is clear: to determine whether a debt was incurred for consumer-related purposes, it is necessary to understand details about the actual use of the funds.

Several federal courts have denied class certification in similar cases due, in part, to the fact-intensive inquiry necessary to determine whether transactions were primarily for consumer purposes. *See*, *e.g.*, *In re OnStar Contract Litig.*, 278 F.R.D. at 380-81; *Loughlin*, 2018 WL 1896409, at *15-16; *Toldy*, 2011 WL 4634154, at *3-4; *Powers*, 2011 WL 3811129, at *14-20; *Roman*, 2001 WL 322563, at *2. The District Court should have reached the same result in this case.

For example, like Boczek's claims, *In re OnStar Contract Litig.* involved vehicles. The court explained why class certification was inappropriate:

> Many people purchase or lease vehicles for both personal and business uses (e.g., realtors, salespersons, small business owners, construction workers, etc.). Excluding "persons or entities who purchased their vehicles primarily for commercial or business purposes" from the proposed class will not resolve this issue. If a person purchased a vehicle for both personal and business uses, who decides which use is *primary*? Plaintiffs' position appears to be that the class plaintiffs would simply make that determination on their own—but that gets us nowhere. The Plaintiffs in both *Zine* and *Sautner* believed their personal use of their vehicle was

17

> primary and their commercial use secondary—that is why they
> filed suit under the MCPA. But the defendant can challenge that
> assertion and establish that the plaintiff's primary use was
> commercial, thereby entitling it to summary judgment.

278 F.R.D. at 381. The problems identified by the *McLaughlin* court apply equally

in this case and should have precluded class certification.

As previously noted, credit cards—which make up approximately 30% of the

transactions in this case—are particularly tricky because "often it is difficult to

characterize the overall purpose of a credit card account that allows for a large

number of individual transactions." *Am. Exp. Co.*, 452 U.S. at 245. Assume, for

example, a self-employed carpenter uses a credit card in his own name to buy lumber

and other materials for his business but also uses the card for groceries. Determining

which use was primary and which use was secondary would require a detailed review

of account statements. W. Va. Code § 46A-2-122(b).

The problem posed by credit cards is not limited to small business owners.

For example, assume an employee of a large corporation uses a personal credit card

for business-related travel expenses because the company lets employees keep points

awarded by the credit card company. As with the carpenter, determining whether the

employee used the credit card "primarily" for covered purposes would require

painstaking study of account statements. *Id.*

Loans disbursed in lump sums for non-specified purposes, such as the

unsecured loans at issue here, are even more problematic because there is no telling

18

how the funds were used short of conducting third-party discovery. That dilemma figured prominently in the rationale for denying class certification in *Loughlin*, 2018 WL 1896409, at *16, and *Powers*, 2011 WL 3811129, at *17.

Two cases Boczek cited actually support the need for a detailed inquiry into the actual use of funds. In *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672 (7th Cir. 2013), the Seventh Circuit found individualized inquiries unnecessary because "it is unlikely that ATMs in bars are commonly used for business transactions." *Id.* at 677. In *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974), the Seventh Circuit noted, in *dicta*, that transactions with a "retail home furnishings establishment" were not likely business-related. *Id.* at 1165 n.4.

*Hughes* and *Haynes* illustrate PenFed's point by contrast. PenFed does not contend that the question of whether a class of transactions were for consumer- or business-related purposes can never be resolved on a class-wide basis. On the contrary, the Seventh Circuit's observations that ATM withdrawals in college bars and purchases at home furnishings stores are unlikely to be business-related makes sense. As another example, mortgages requiring borrowers to certify they will use properties as primary personal residences would arguably be subject to class-wide proof. Those facts stand in stark contrast to this case, however, because Boczek did not present any evidence to demonstrate that the relevant borrowers likely used the borrowed funds primarily for consumer purposes.

19

The opinion in this case did not grapple with the legal principles discussed in this section. Instead, the opinion found it was "not necessary" to do so "because the proposed class only contains consumer loans[.]" (Ex. 1 at 18.) To the extent that statement constitutes a factual finding that all loans at issue qualify as consumer loans, the finding is not supported by the opinion or the record.

The only explanation the opinion provides is a vague reference to "PenFed's own records" supposedly showing "1,497 fees collected on 422 consumer loans." (Ex. 1 at 18.) The opinion does not cite any specific evidence, and the parties did not file "records" reflecting the stated amounts. Instead, Boczek filed two pages of excerpts from spreadsheets with limited information about 50 accounts. (Dkt. No. 101-4.) The excerpts contain no information about how the borrowers used the funds besides acronyms indicating that a handful of the loans are secured by vehicles. (*Id.*)

The opinion may have relied on PenFed's answer to Interrogatory No. 16 because it identifies 1,497 fees (before subtracting refunds). (Dkt. No. 101-3 at PageID # 622-624.) The interrogatory answer, however, contains no information whatsoever about how the borrowers used the funds. (*Id.*)

In sum, the opinion does not—and cannot—identify a legal or evidentiary basis to support a finding that all, or even most, of the loans at issue were used primarily for consumer purposes such that they are subject to the WVCCPA.

Therefore, the District Court committed manifest errors of both fact and law, and this Court should vacate the order granting class certification.

## IV.    Other Lienhart Factors Weigh in Favor of Interlocutory Review.

In addition to correcting manifest errors, interlocutory review is appropriate when it permits "resolution of an unsettled legal question of general importance[.]" *Lienhart*, 255 F.3d at 144. Early review of such questions is especially appropriate when future events will likely preclude review at a later time, such as, for example, "where a grant of class certification creates irresistible pressure on the defendant to settle[.]" *Id.* at 143-44 (citation omitted).

Setting aside the adequacy of the opinion, it is indisputable that this petition raises an unsettled legal question of general importance, the resolution of which would provide valuable guidance to parties and courts in future class actions under consumer protection statutes that require plaintiffs to prove how they actually used loan proceeds, as opposed to simply proving their status as non-corporate individuals.[3] Furthermore, this Court recently granted a Rule 23(f) petition in a similar case involving allegations that convenience fees violate the WVCCPA. *Ally Fin. Inc. v. Sheridan*, No. 25-181, Dkt. No. 13 (September 24, 2025). That petition raised different issues, but the question presented here may also apply to that case.

---

[3] This Court found predominance was satisfied in *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267 (4th Cir. 2010). The opinion is inapposite, however, because the relevant statute required only that the plaintiff was an individual. *Id.* at 272 n.6.

Moreover, appellate review may not be available later due to the WVCCPA's severe penalties. The WVCCPA provides for actual damages plus attorney's fees and "a penalty of $1,000 per violation[.]" W. Va. Code §§ 46A-5-101(1), 46A-5-104. It also provides an "inflation" adjustment. W. Va. Code § 46A-5-106. Since Boczek claims PenFed charged a $5.00 fee 1,497 times, a class with $7,485.00 in aggregated damages could theoretically seek $2,050,919.91, plus fees. That risk will create immense pressure to settle that may preclude future appellate review.[4]

## CONCLUSION

The District Court abused its discretion by certifying a class without explaining how an essential question can be answered on a class-wide basis. This Court should grant PenFed's petition and vacate the class certification order.

---

[4] PenFed acknowledges the amount at stake currently appears to be below the $5,000,000 threshold for diversity jurisdiction under the Class Action Fairness Act. The District Court, however, denied PenFed's facial challenge to Boczek's jurisdictional allegations.

22

Dated: November 17, 2025.          Respectfully submitted,


**PENTAGON FEDERAL CREDIT UNION**

/s/ Michael A. Graziano
Michael A. Graziano
Sarah A. James
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
Telephone: 202.659.6671
Facsimile: 202.659.6699
E-mail:   mgraziano@eckertseamans.com
              sjames@eckertseamans.com

Brian J. Moore (WV State Bar # 8898)
DINSMORE & SHOHL LLP
P.O. Box 11887
707 Virginia Street East, Suite 1300
Charleston, WV 25339-1887
Telephone:   (304) 357-0900
Facsimile:   (304) 357-0919
Email:  brian.moore@dinsmore.com

Kinsey M. Novak Booth
(WV State Bar # 14661)
DINSMORE & SHOHL LLP
215 Don Knotts Blvd., Suite 310
Morgantown, WV 26501
Telephone: (304) 225-1416
Facsimile:  (304) 296-6116
Email: kinsey.booth@dinsmore.com

*Attorneys for Defendant-Petitioner*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** _____    **Caption:** Pentagon Federal Credit Union v. Joseph Boczek

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____5,162_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word_____ [*identify word processing program*] in
Times New Roman, 14-point font_____ [*identify font, size, and type style*];

**or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) /s/ Michael A. Graziano_____

Party Name Pentagon Federal Credit Union_____    Date: 11/17/2025_____

12/09/2024 NA/MEO

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and I further certify that a true and correct copy of the foregoing document was sent via electronic mail and first-class mail to the following counsel of record:

Patricia M. Kipnis, Esq.
Bailey & Glasser LLP
923 Haddonfield Road
Suite 300
Cherry Hill, NJ 08002
pkipnis@baileyglasser.com

Jason E. Causey, Esq.
Katz Kantor Stonestreet & Buckner
206 South Walker Street
Princeton, WV 24740
jcausey@kksblaw.com

Jonathan R. Marshall, Esq.
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
jmarshall@baileyglasser.com

James L. Kauffman, Esq.
Bailey & Glasser LLP
1055 Thomas Jefferson St., NW
Suite 540
Washington, DC 20007
jkauffman@baileyglasser.com

Denali S. Hedrick
Bailey & Glasser LLP
94 Long Street, Suite 200
Westover, WV 26501
dhedrick@baileyglasser.com

Dated: November 17, 2025.

/s/ Michael A. Graziano
Michael A. Graziano
Sarah A. James
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
Telephone: 202.659.6671
Facsimile: 202.659.6699
E-mail:  mgraziano@eckertseamans.com
         sjames@eckertseamans.com
*Attorneys for Defendant-Petitioner*

25